## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SENTRY INSURANCE A MUTUAL COMPANY, | ) ) ) |
| v. | ) Civil Action No. _____ |
| | ) |
| IRONSHORE SPECIALITY INSURANCE COMPANY, | ) ) ) |

### COMPLAINT FOR DECLARATORY AND OTHER RELIEF

NOW COMES the Plaintiff, Sentry Insurance a Mutual Company, by and through its attorneys, BRENNAN HARRIS & ROMINGER LLP, and for its Complaint for Declaratory and Other Relief states as follows:

### INTRODUCTION

1.      The Estate of Martha W. Edins (the "Estate") filed a Complaint against Stafford Transport, Inc. ("Stafford") and Lavon Alls ("Alls") for damages allegedly sustained in an auto accident which resulted in the death of Martha W. Edins ("Edins").  The Estate filed the Complaint in the case captioned, *Ernest Wayne Edins, et al. v. Stafford Transport, Inc., et al.*, Fulton County, Georgia, Civil Action No. 11EV012503A (the "Underlying Action").

-1-

2.     Sentry Insurance a Mutual Company ("Sentry") issued commercial auto liability policies to Stafford and Alls with total combined limits of $2 million per accident.  Sentry funded the defense of Stafford and Alls through the conclusion of the Underlying Action.

3.     Ironshore Specialty Insurance Company ("Ironshore") issued a commercial umbrella liability policy to Stafford with limits of $4 million per accident in excess of Sentry's primary policy limits.

4.     Ironshore received two separate written notices from Stafford's insurance broker providing details of the auto accident which gave rise to the Underlying Action.

5.     Ironshore responded to the first notice by advising that it did not anticipate any exposure to its policy and that it would close its file.  Ironshore did not respond to the second notice, and did not contact Sentry or Stafford prior to the verdict in the Underlying Action.

6.     The Underlying Action resulted in a verdict against Stafford and Alls in the amount of $3,013,500 plus costs, pre-judgment interest and post-judgment interest.  The Estate made a time-limited demand to settle for $3,013,500.

7.      Sentry offered to tender its full $2 million policy limits and requested that Ironshore pay the balance of the settlement.

8.      Notwithstanding its obligation to do so, Ironshore refused to pay the balance of the settlement.

9.      In order to protect Stafford and Alls, Sentry offered to divide the balance of the settlement with Ironshore while expressly reserving Sentry's right to seek reimbursement from Ironshore.  Ironshore agreed.

10.      Sentry now seeks a declaration pursuant to 28 U.S.C. § 2201 that Ironshore is obligated to pay the full amount of the settlement in excess of Sentry's $2 million policy limits.

11.      In addition, Sentry seeks reimbursement from Ironshore for the amount Sentry paid in excess of its policy limits – $506,750.

## PARTIES

12.      Sentry is a Wisconsin mutual company with its principal place of business in Wisconsin.   Sentry has no parent corporation. No publicly-held corporation owns ten percent or more of the stock of Sentry.

13.     Ironshore is a corporation incorporated in Arizona.  On information and belief, Ironshore's principal place of business is New York.  Ironshore maintains a registered agent for service at 40 Technology Parkway South, Suite 300, Norcross, Georgia.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

## THE INSURANCE POLICIES

16.     Sentry issued Commercial Auto Liability Policy No. CT751662-3810-101 to Stafford for the policy period January 1, 2010 to January 1, 2011 ("Stafford/Sentry Policy").  **(Exhibit 1)**

17.     Sentry issued Commercial Auto Liability Policy No. CT783773-8010-101 to Alls for the policy period July 13, 2010 to July 13, 2011 ("Alls Policy") (collectively with the Stafford/Sentry Policy, "Sentry Policies").  **(Exhibit 2)**

18.     The Sentry Policies collectively provide $2 million in coverage for the claims alleged in the Underlying Action.

19.     Ironshore issued Commercial Umbrella Liability Policy No. 000056500 to Stafford for the policy period January 1, 2010 to January 1, 2011 ("Ironshore Policy").  **(Exhibit 3)**

20.     The Ironshore Policy provides $4 million in coverage for the claims alleged in the Underlying Action, in excess of the Sentry Policies.

21.     The Ironshore Policy contains a notice provision, which reads in pertinent part:

**H.     Duties in the Event of an Occurrence, Claim or Suit**

1.     You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim under this Policy.  To the extent possible, notice should include:

a.     how, when and where the **Occurrence** took place;

b.     the names and addresses of any injured persons and any witnesses; and

c.     the nature and location of any injury or damage arising out of the **Occurrence**.

2.      If a claim is made or **Suit** is brought against any
**Insured** which is reasonably likely to involve this Policy,
you must notify us in writing as soon as practicable.

(Emphasis original) (**Exhibit 3** at pp. 12-13/21)

## THE UNDERLYING ACTION

22.     On or about December 4, 2010, Martha W. Edins died in an automobile

accident with Alls.  At the time of the accident, Alls was allegedly operating his

vehicle in the course and scope of his employment with Stafford.  (Underlying Action

Complaint attached as **Exhibit 4**)

23.     On December 7, 2010, Stafford's insurance broker submitted an

"Automobile Loss Notice" ("First Notice") to Ironshore, which provided Ironshore

with details of the accident and fatality, and identified Sentry as the primary carrier.

**(Exhibit 5)**

24.     Stafford's insurance broker sent the First Notice to YORK Claims

Service, Inc. ("York"), as mandated by the terms of the Ironshore Policy.  York serves

as Ironshore's third party claims administrator.

25.     On December 14, 2010, York sent an "Acknowledgment of

Assignment" advising that it received Stafford's "claim" and has set up a file.

(Acknowledgment of Assignment attached as **Exhibit 6**)

26.    On December 30, 2010, Gail Z. Pare, Complex Casualty Analyst with York, sent an email directly to Stafford advising, **"I do not anticipate any exposure to Stafford's policy and I am closing my file."**  (emphasis added) **(Exhibit 7)**

27.    On January 14, 2011, after the Estate retained counsel and asserted claimant rights under O.C.G.A. § 33-3-28, and notwithstanding the fact that Ironshore had already closed its file, Stafford sent a second notice to Ironshore – this one entitled "General Liability Notice of Occurrence/Claim" ("Second Notice") with a cover E-mail which reads, "New Claim for [Stafford]."  (Cover E-mail and Second Notice attached as **Exhibit 8**)

28.    The Second Notice provided additional details of the accident, described Edins as a "claimant," provided Sentry's claim numbers and contact information, and provided police department report numbers to allow Ironshore to investigate the claim. **(Exhibit 8)**

29.    Ironshore did not respond to Stafford's Second Notice.  Prior to the verdict, Ironshore did not request any information related to the accident or Underlying Action, and did not contact Sentry, Stafford or Alls to discuss any details of the accident or Underlying Action.

30.     Sentry defended Stafford and Alls through the conclusion of the Underlying Action.

31.     Prior to trial, the Estate sought at least $2 million to settle the Underlying Action.

32.     Defense counsel repeatedly evaluated liability at 50/50 and assessed the settlement value at no more than $750,000.

33.     Sentry offered $500,000 to settle the Underlying Action, which the Estate did not accept.

34.     On May 22, 2014, the jury returned a verdict apportioning fault at 75% Alls/Stafford and 25% Edins with damages totaling $4,018,000, resulting in a net verdict against Stafford/Alls in the amount of $3,013,500, plus costs, pre-judgment interest and post-judgment interest.  **(Exhibit 9)**

35.     On May 30, 2014, the Estate submitted a settlement demand for $3,013,500 in exchange for giving up its right to seek costs, pre-judgment interest and post-judgment interest.

36.     Sentry agreed to tender its full $2 million policy limits toward settlement and requested that Ironshore contribute the balance.

37.     Notwithstanding its obligation to do so, Ironshore initially refused to contribute toward settlement.

38.     At Ironshore's insistence, Sentry provided extensive pleadings, discovery, defense counsel reports and other materials related to the Underlying Action, which irrefutably demonstrated that Ironshore was obligated to fund the remaining balance of the settlement.

39.     Rather than miss the settlement opportunity and potentially expose Stafford and Alls to additional damages, Sentry offered to split the remaining $1,013,500 evenly with Ironshore with the express condition that Sentry may later seek reimbursement from Ironshore.

40.     Ironshore agreed to split the remaining $1,013,500 and expressly acknowledged Sentry's right to seek reimbursement from Ironshore for Sentry's contribution in excess of $2 million.

41.     The Underlying Action ultimately settled for $3,013,500, which represents a fair and reasonable settlement amount in light of the verdict.

## FIRST CLAIM

### Declaratory Relief – 28 U.S.C. § 2201

42.     Sentry realleges and incorporates by reference the above allegations.

43.     The Ironshore Policy requires Stafford to notify Ironshore of an occurrence that may result in a claim under the Ironshore Policy.

44.     The First Notice and Second Notice each satisfy Stafford's obligation to provide notice of an occurrence that may result in a claim under the Ironshore Policy.

45.     The Ironshore Policy also requires Stafford to notify Ironshore if a claim is made or suit is brought against Ironshore which is "reasonably likely" to involve the Ironshore Policy.

46.     Under Georgia law, the phrase "reasonably likely" contemplates that the insured is not required to give notice every time there is a claim against it, nor is the insured required to provide notice upon the mere possibility that the excess will be involved.  Instead, "reasonably likely" means probable, not merely possible, that a claim will involve the excess policy.

47.     It was not "reasonably likely" that the Underlying Action would involve the Ironshore Policy and, therefore, Stafford was not obligated to provide notice of a claim or suit.

48.     Even assuming Stafford was obligated to provide notice of a claim or suit, the First Notice and Second Notice each satisfy that obligation.

49.     Stafford satisfied all of its conditions and obligations under the Ironshore Policy as it relates to the Underlying Action.

50.     The Ironshore Policy provides coverage for the damages awarded against Stafford and Alls in excess of the Sentry Policies.

51.     Ironshore is obligated to fund the entire settlement amount in excess of Sentry's $2 million policy limits - $1,013,500.

## SECOND CLAIM

### Reimbursement

52.     Sentry realleges and incorporates by reference the above allegations.

53.     Sentry contributed $506,750 above its policy limits to settle the Underlying Action.

54.     Ironshore expressly agreed that Sentry may seek reimbursement from Ironshore for the amount Sentry contributed above policy limits.

55.     Ironshore was obligated to fund the entire settlement amount in excess of Sentry's $2 million policy limits.

56.     Therefore, Sentry is entitled to contribution from Ironshore in an amount no less than $506,750.

57.     In the alternative, Sentry is entitled to indemnification from Ironshore in an amount no less than $506,750.

58.     In the alternative, Ironshore has been unjustly enriched in an amount no less than $506,750 and must therefore reimburse Sentry in an amount no less than $506,750.

59.     In the alternative, Sentry is entitled to subrogation or equitable subrogation from Ironshore in an amount no less than $506,750.

60.     In the alternative, Sentry is entitled to equitable relief, pursuant to Georgia Statutes, Title 23, Chapter 1, in an amount no less than $506,750.

WHEREFORE, Sentry requests that the Court:

A.     Declare that Ironshore is obligated to contribute $1,013,500 toward the settlement of the Underlying Action;

B.     Award Sentry $506,750, plus interest, as reimbursement for the amount Sentry contributed toward settlement in excess of its policy limits;

C.     Award Sentry its costs, disbursements, and fees as provided by law; and

D.     Grant such other relief as the Court deems just and equitable.

Submitted this __12th__ day of January, 2015.


/s/ Edward R. Stabell, III
EDWARD R. STABELL, III
Georgia Bar No. 673715
T. LANGSTON BASS, JR.
Georgia Bar No. 041320
Attorneys for Plaintiff

**BRENNAN, HARRIS & ROMINGER LLP**
P.O. Box 2784
Savannah, Georgia 31402
Phone: (912) 233-3399 Fax: (912) 236-4558
E-mail: ers@bhrlegal.com     tlb@bhrlegal.com

Heidi L. Vogt
Jason R. Fathallah
**VON BRIESEN & ROPER, S.C.**
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Phone: (414) 276-1122
E-mail  hvogt@vonbriesen.com     jfathall@vonbriesen.com
F:\Sentry\STAFFORD TRANSPORT\COMPLAINT (WP VERSION).wpd